UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IMHOTEP H'SHAKA,

                                        Plaintiff,          9:17-CV-0108
                                                            (GTS/ATB)
v.

JOSEPH BELLNIER,[1] Deputy Commissioner for
Correctional Facilities; MAUREEN BOSCO, Former
Director of Central New York Psychiatric Center;
DEBORAH McCULLOCH, Executive Director of
Central New York Psychiatric Center; JOANNE
WALDRON, Clinton Correctional Facility Office of
Mental Health Unit Chief; JOSEPH PORCELLI, Clinton
Correctional Facility Offender Rehabilitation Coordinator;
KEVIN RANDALL, Sergeant; DAVID LUCIA, Acting
Deputy Superintendent of Security; and JUSTIN DELISLE,
Sergeant,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

PRISONERS' LEGAL SERVICES OF NEW YORK           ALISSA R. HULL, ESQ.
   Counsel for Plaintiff                        MICHAEL E. CASSIDY, ESQ
114 Prospect Street
Ithaca, New York 14850

STORCH AMINI PC                                 STEVEN G. STORCH, ESQ.
   Co-Counsel for Plaintiff                     CARA J. SCHMIDT, ESQ.
2 Grand Central Tower                           JOHN W. BREWER, ESQ.
140 East 45th Street, 25th Floor
New York, New York 10017

_____

[1]        In their opposition memorandum of law, Defendants argue that James O'Gorman
should be automatically substituted for Mr. Bellnier because Mr. Bellnier has retired from
DOCCS and Mr. Gorman currently holds Mr. Bellnier's former position as Acting Deputy
Commissioner for Correctional Facilities.  (Dkt. No. 29, at 4 [Defs.' Opp'n Mem. of Law].)
Plaintiff acknowledges that substitution of Mr. O'Gorman is proper based on Fed. R. Civ. P.
25(d).  (Dkt. No. 33, at 4 n.1 [Pl.'s Reply Mem. of Law].)  Mr. O'Gorman shall therefore be
substituted for Mr. Bellnier as a Defendant in this action.  The Clerk of the Court is respectfully
directed to amend the caption.

HON. ERIC T. SCHNEIDERMAN                    BRUCE J. BOIVIN, ESQ.
Attorney General of the State of New York    MATTHEW P. REED, ESQ.
  Counsel for Defendants
The Capitol
Albany, NY 12224-0341

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently pending before the Court, in this action filed by Imhotep H'Shaka ("Plaintiff")

against the eight above-captioned employees of the New York State Department of Corrections

and Community Supervision ("DOCCS"), the Central New York Psychiatric Center, and Clinton

Correctional Facility (collectively "Defendants") under 42 U.S.C. § 1983 and the Eighth and

Fourteenth Amendments of the United States Constitution, is Plaintiff's motion for an Order

preliminarily enjoining Defendants, pursuant to Fed. R. Civ. P. 65, from keeping Plaintiff in the

Special Housing Unit ("SHU") under the administrative segregation ("Ad Seg") program while

his lawsuit proceeds to trial.  (Dkt. No. 17.)  Defendants have opposed Plaintiff's motion, and

Plaintiff has replied to Defendants' opposition.  (Dkt. Nos. 29, 33.)  For the reasons set forth

below, Plaintiff's motion for a preliminary injunction is denied.

## I.      RELEVANT BACKGROUND

### A.      Summary of Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges that he has been confined in

SHU (either as a result of disciplinary segregation or Ad Seg) for more than 20 years, which has

caused or exacerbated both mental and physical medical conditions.  (Dkt. No. 1, at 5-16.)

More specifically, the Complaint alleges that, as a prisoner kept in SHU under Ad Seg,

Plaintiff faces "conditions of extreme isolation, sensory deprivation, and restricted movement"

as well as an absolute denial of work, cultural and social opportunities, severely limited recreational and religious opportunities, limited access to personal property, extraordinary levels of surveillance and control, and limited contact with family and loved ones.  (*Id.* at 5-9.)  The Complaint alleges that continuous confinement in such a restricted environment and inadequate mental health treatment has caused or exacerbated conditions such as anxiety, panic attacks, physical pain, Vitamin D deficiency, insomnia, and hives.  (*Id.* at 9-16.)

Based on these factual allegations, Plaintiff asserts five claims against Defendants: (1) a claim of deprivation of the necessities of life and violation of his basic human dignity and right to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments; (2) a claim of failure to ensure necessary and appropriate mental health care and deliberate indifference to Plaintiff's need for such care in violation of the Eighth and Fourteenth Amendments; (3) a claim of imposition of disproportionate punishment in violation the Eighth and Fourteenth Amendments; (4) a claim of deprivation of his liberty interest through indefinite confinement without meaningful review in violation of Fourteenth Amendment; and (5) a claim of deprivation of a protected liberty interest by arbitrarily and capriciously denying release from Ad Seg based on a predetermined outcome in violation of the Fourteenth Amendment.  (*Id*. at 30-34.)  Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.

As a relief, Plaintiff seeks (1) injunctive and declaratory relief, (2) compensatory and punitive damages, and (3) reasonable attorneys' fees and costs.  (*Id.* at 2, 35.)

B.     **Parties' Briefing of Plaintiff's Motion**

1.     **Plaintiff's Memorandum of Law-in Chief**

Generally, in support of his motion for a preliminary injunction, Plaintiff asserts three

arguments.  (Dkt. No. 17, at 6-29 [Pl.'s Mem. of Law].)  First, Plaintiff argues that the record

establishes irreparable injury.  (*Id.* at 20-21.)  Specifically, Plaintiff argues that the continuing

deprivation of his liberty interest caused by his open-ended confinement in Ad Seg is a *per se*

irreparable injury, though he argues that he has also shown irreparable injury based on the

worsening conditions of his cell and confinement, and the risk to his psychological and physical

well-being as a result of that continued confinement.  (*Id.*)  Plaintiff argues that relief cannot wait

until the outcome of this litigation because the trial is not scheduled until October 2018, more

than ten months from when he filed his motion.  (*Id.* at 21.)

Second, Plaintiff argues that the record establishes a likelihood of success on the fourth

and fifth claims in the Complaint.  (*Id.* at 21-27.)  Specifically, Plaintiff argues that there is a

likelihood that he will succeed on showing that the 60-day review process for reviewing

Plaintiff's continued placement in Ad Seg fails to meet the three requirements outlined in

*Proctor v. LeClaire*, 846 F.3d 597 (2d Cir. 2017).  (*Id.* at 22-27.)  In particular, Plaintiff argues

that the reviews are conducted with a preordained outcome (thus making the reviews

meaningless) and that the rationale for continuing to keep him in Ad Seg is impermissibly based

solely on his past conduct rather than a consideration of his more recent behavioral improvement

(thus making the review process a "charade in the name of prison security to mask indefinite

punishment for past transgressions").  (*Id.*)  Plaintiff also argues that Defendants' refusal to

consider alternative placements that are less restrictive than SHU but more restrictive than

releasing Plaintiff into the general population is further evidence of the meaningless and arbitrary nature of the review process as applied to Plaintiff.  (*Id.* at 27.)  Plaintiff additionally argues that significant delays in reviewing and providing copies of the reviews to Plaintiff further supports that Plaintiff has a likelihood of success on the merits of his claims.  (*Id.*)

Third, and last, Plaintiff argues that an injunction would serve the public interest, and that the balance of equities favors Plaintiff.  (*Id.* at 28-29.)  Specifically, Plaintiff argues that releasing him from Ad Seg (and thus SHU) would greatly eliminate the hardships that have been imposed on him without due process.  (*Id.*)  Plaintiff further argues that placement in the Close Supervision Unit or a step-down program would address DOCCS' concerns that he would be dangerous if re-introduced into the general population.  (*Id.*)

### 2.     Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendants assert three arguments.  (Dkt. No. 29, at 10-20 [Defs.' Opp'n Mem. of Law].)  First, Defendants argue that Plaintiff cannot show irreparable harm because the three-tiered review used by DOCCS meets the *Proctor* standard and because Plaintiff cannot show that his constitutional rights are violated by his confinement.  (*Id.* at 10.)  Defendants also argue that Plaintiff cannot show irreparable harm based on his physical or mental health because he has never been diagnosed with a serious mental illness and his skin irritation has typically resolved with ordinary Benadryl.  (*Id.* at 11.)

Second, Defendants argue that Plaintiff has not demonstrated a likelihood of success on the merits, though Defendants acknowledge that Plaintiff has an established liberty interest in avoiding lengthy restrictive confinement.  (*Id.* at 11-19.)   Specifically, Defendants argue that Plaintiff cannot show that the 60-day review process was constitutionally deficient because

DOCCS procedure complies with the requirements outlined in *Proctor*.  (*Id.* at 12-19.)

Defendant argues that any delays in providing the review reports to Plaintiff did not violate a

federal right, that *Proctor* did not preclude consideration of past events when determining

retention in Ad Seg, and that the affidavits submitted with Defendants' opposition memorandum

of law show that there were many considerations in addition to Plaintiff's past violent behavior

to justify keeping him in Ad Seg.  (*Id.* at 14-18.)  Defendants also argue that the fact that no

prisoner has ever been recommended for release from Ad Seg up to this time does not establish

that the reviews are based on preordained conclusions.  (*Id.* at 19.)

Third, and last, Defendants argue that the balance of the equities tips in Defendants'

favor due to the high priority of DOCCS' interest in institutional safety and security.  (*Id.* at 20.)

### 3.  Plaintiff's Reply Memorandum of Law

Generally, in reply to Defendants' opposition, Plaintiff asserts four arguments.  (Dkt. No.

33, at 8-13 [Pl.'s Reply Mem. of Law].)  First, Plaintiff argues that his request for an injunction

would not require DOCCS to release him directly into the general population, but rather into a

step-down program or other similar program with a level of restrictions more than the general

population but less than those he currently faces from Ad Seg in SHU.  (*Id.* at 8-9.)  Plaintiff

argues that this compromise level of relief is encompassed by the Complaint's demand for

"injunctive relief ordering defendants to ameliorate the conditions under which [Plaintiff] is

held."  (*Id.* at 9.)

Second, Plaintiff reiterates his argument that he has shown an irreparable injury, arguing

also that Defendants did not address his initial argument but rather confused the irreparable harm

and likelihood of success prongs when making their argument in opposition.  (*Id.* at 9-10.)

Third, Plaintiff argues that, when opposing his argument regarding likelihood of success, Defendants ignore the factual parallels between this case and *Proctor*. (*Id.* at 10.) Plaintiff argues that the use of Plaintiff's current good behavior as a justification to keep him in Ad Seg is circular logic that was rejected by the Second Circuit in *Proctor*. (*Id.* at 11-12.) Plaintiff also argues that the DOCCS process is not sufficient because they rely on "gut feelings" rather than any objective criteria. (*Id.* at 12-13.)

Fourth, and last, Plaintiff argues that the balance of equities favors him because deference is not warranted to DOCCS' concerns about safety where, as here, the review process is a sham proceeding with a preordained outcome that violates Plaintiff's due process rights. (*Id.* at 13.)

## II.   GOVERNING LEGAL STANDARD

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Rather, generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: (1) that the party will likely experience irreparable harm if the preliminary injunction is not issued; (2) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor, or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; and (3) that the preliminary injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (reciting standard limited to first part of second above-stated element); *accord Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d

7

Cir. 2015) (reciting standard including second part of above-stated element); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in *Winter*]").

With regard to the first element, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003).

With regard to the second element, "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *See, e.g., Ligon v. City of New York,* 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); *Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 291 (D. Vt. 2011) (considering the harm to plaintiff and any "countervailing benefit" to plaintiff in balancing the equities); *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 99-CV-9214, 1999 WL 34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); *Arthur v. Assoc. Musicians of Greater New York*, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 801-02 (S.D.N.Y.1967)

8

(explaining that, in order to "balance the equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will be subjected") [internal quotation marks omitted].[2]

"A sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205-06 (2d Cir. 1970).[3] "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp. 2d 321, 333-34 (S.D.N.Y. 2009); *see also Semmes Motors, Inc.,* 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[4]

---

[2]     *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the *undiscounted* balance of harms favors Y.") [emphasis added].

[3]     *See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988);  *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir. 1985); *R.R. Yardmasters of Am. v. Penn. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

[4]     The Court notes that the requirement of a balance of hardships tipping decidedly in the movant's favor is added only to the second part of the second element (i.e., the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for

With regard to the third element, a preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). The "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." *Black's Law Dictionary* at 1350 (9th ed. 2009).

The Second Circuit recognizes three limited exceptions to the above-stated general standard. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous "serious questions" standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Id.* (citing *Able v. United States*, 44 F.3d 128, 131 [2d Cir. 1995]); *see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks

---

litigation), and not also to the first part of the second element (i.e., the existence of a likelihood of success on the merits), which (again) requires merely a balance of equities (i.e., hardships and benefits) tipping in the movant's favor. *See Citigroup Global Markets, Inc.*, 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); *cf. Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 192 (E.D.N.Y. 2013) ("[T]he *Winter* standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits.").

omitted).  This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to the non-movant on the merits at trial.  *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 [2d Cir. 2006]); *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . *and* make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the status quo. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).[5]  As for the point in time that serves as the status quo, the Second Circuit has defined this point in time as "the last actual, peaceable uncontested status which preceded the pending controversy."  *LaRouche v. Kezer*, 20 F.3d 68, 74, n.7 (2d Cir. 1994); *accord Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014); *Actavis PLC*, 787 F.3d at 650.

---

[5]      Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs.*, 60 F.3d at 34).

## III.     ANALYSIS

### A.     Likelihood of Success on the Merits or Serious Questions as to the Merits

After carefully considering the parties' arguments on this issue, the Court finds that Plaintiff has not shown either a likelihood of success on the merits or a serious question as to the merits, for the reasons stated in Defendants' Opposition Memorandum of Law.  (Dkt. No. 29, at 11-20 [Defs.' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

As an initial matter, Defendants suggest that the Court should apply the heightened standard for mandatory preliminary injunctions because Plaintiff is seeking to alter the status quo by requiring Defendants to release him from Ad Seg.  (Dkt. No. 29, at 9 [Defs.' Opp'n Mem. of Law].)  The Court agrees.  The preliminary injunction that Plaintiff seeks is clearly mandatory rather than prohibitory because he has been in SHU under the Ad Seg program since 2010, and was in SHU under the disciplinary segregation program for many years prior to that time; his release from Ad Seg confinement in SHU would therefore alter the status quo rather than maintain it.  As noted above in Part II of this Decision and Order, a mandatory preliminary injunction "'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011); *see also Mastrovincenzo*, 435 F.3d at 89 (noting that, when an injunction is mandatory in nature, it "'thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success'"); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) ("The moving party must make a 'clear' or 'substantial' showing of a likelihood of success where . . . the injunction sought 'will alter, rather than maintain, the status quo.'"); *General Mills, Inc. v. Chobani, LLC*, 158 F. Supp. 3d 106, 117

12

(N.D.N.Y. 2016) (Hurd, J.) ("[A] party seeking a 'mandatory' preliminary injunction must demonstrate a 'clear' or 'substantial' likelihood of success on the merits.").

Granted, the Second Circuit has held that the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4. However, Plaintiff has not made such a showing. In the Complaint, Plaintiff alleges that he has suffered (and will continue to suffer) both mental and physical damage as a result of his lengthy Ad Seg confinement, including anxiety with panic attacks, insomnia, suicidal thoughts, inability to concentrate, and a chronic skin rash. (Dkt. No. 1, at ¶¶ 40, 44-74, 81-85 [Compl.].) However, the medical and other evidence submitted with the motion and other memoranda do not suggest that extreme or very serious damage will result from a denial of Plaintiff's motion for a preliminary injunction. Notably, medical records submitted with Plaintiff's motion consistently document a recurrent skin rash that was treated with over-the-counter Benadryl, over-the-counter bacitracin, prednisone, hydrocortisone cream, and special soap without any indication of complications. (Dkt. No. 17, Attach. 16, at 2-33.) There is no evidence to support Plaintiff's assertions that this rash was caused by his anxiety; rather, multiple notes suggest it was related to an allergic reaction, possibly to deodorant, peanut butter, or medications for other illnesses. (*Id.* at 12, 27.) Regarding his anxiety, these treatment notes show that Plaintiff was engaged in treatment with the Office of Mental Health, but record little else other than the fact he was taking anti-anxiety medications at various times and a few instances of symptoms including anxiety, chest pain, vertigo, and increased heart rate and blood pressure; notably, many of these symptoms were reported in 2013, with few reports in more recent treatment notes. (*Id.* at 16, 18-

21, 25, 28, 30-33.)  A note from a social worker, dated August 28, 2014, indicates that, although Plaintiff receives monthly mental health screenings, none of those assessments had resulted in endorsement of a major anxiety disorder.  (Dkt. No. 17, Attach. 14, at 3.)  Additionally, a diagnosis form from May 2016 indicated that Plaintiff's former diagnosis of adjustment disorder with anxiety had been changed to anti-social personality disorder; Plaintiff was classified as a Level 3 inmate, suggesting that he may benefit from brief psychotherapy and psychiatric medication but that he did not have a Serious Mental Illness diagnosis.  (Dkt. No. 29, Attach. 4, at 7-8.)  The medical and other evidence currently before the Court does not substantiate the high degree of severity of the medical conditions that Plaintiff alleges as a result of his continued confinement in SHU under Ad Seg.  Because Plaintiff has therefore failed to show that extreme or very serious damage will result from denial of his motion for preliminary injunction, he is required to show that there is a clear or substantial likelihood of success on the merits.[6]

Plaintiff's argument that he has established a likelihood of success on the merits is based heavily on what he perceives to be strong similarities between his situation and the factual situation presented in *Proctor*.  (Dkt. No. 17, Attach. 1, at 21-28 [Pl.'s Mem. of Law].)  However, even if Plaintiff were to show that the factual situation here is sufficiently similar to that in *Proctor*, such factual similarity would not necessarily indicate that there is a likelihood of

---

[6]     Plaintiff argues in his reply memorandum of law that the higher burden for a mandatory injunction means only that he must show "likelihood of success on the merits rather then the less demanding 'serious questions going to the merits' standard."  (Dkt. No. 33, at 10 [Pl.'s Reply Mem. of Law].)  However, this is an erroneous interpretation of Second Circuit law; the case that Plaintiff cites to support his assertion does not suggest that "likelihood of success" is itself the heightened standard, but rather a part of the general standard for preliminary injunctions.  *Citigroup Global Markets, Inc.*, 598 F.3d 30, 34-38 & 35 n.4; *see also Mastrovincenzo*, 435 F.3d at 89 (noting that mandatory injunctions require a showing of a "*greater* likelihood of success") (emphasis added).

success on the merits.  Notably, in *Proctor*, the Second Circuit reversed the district court's findings within the context of a summary judgment motion, not a denial of a preliminary injunction.  *Proctor*, 846 F.3d at 612-14.  The Second Circuit's finding that the plaintiff had raised a genuine dispute of material fact regarding a constitutional violation in DOCCS' application of the three-tiered system for reviewing continued Ad Seg confinement does not equate to a finding that the plaintiff had demonstrated a likelihood of success on the merits of his claim; to the contrary, the Second Circuit acknowledged that some of the evidence could also lead a reasonable jury to conclude that DOCCS had based their Ad Seg reviews on a proper consideration of multiple factors.  *Id.* at 614.  Because the Second Circuit found only that summary judgment was improperly granted to the defendants (rather than finding that summary judgment should have been granted to the plaintiff), the mere fact that *Proctor* was based on similar facts would not alone compel this Court to find that Plaintiff is entitled to a preliminary injunction; rather, the Court must consider, in greater depth, the specific facts in this case as they apply to the heightened standard for mandatory preliminary injunctions and the factors stated in *Proctor*.[7]

---

[7]     Plaintiff also analogizes *Johnson v. Wetzel*, 209 F. Supp. 3d 776 (M.D. Pa. 2016) (a case that did involve a preliminary injunction) as support for his argument that the facts in this case show a likelihood of success on the merits.  (Dkt. No. 17, Attach. 1, at 23 [Pl.'s Mem. of Law].)  However, the Court is not persuaded that the same outcome is warranted here.  In addition to numerous factual differences (including the amount of human contact allowed, evidence supporting mental diagnoses and their resulting symptoms and effects, and the nature and amount of more recent behavioral infractions), it is not apparent that the *Johnson* court applied the same heightened standard that this Court is required to apply based on Second Circuit law.  Notably, the *Johnson* court examined whether there was a "reasonable probability of success on the merits," while the Second Circuit requires this Court to assess whether there is a "clear" or "substantial" likelihood of success on the merits due to the mandatory nature of the preliminary injunction that Plaintiff seeks.  *Johnson*, 209 F. Supp. 3d at 776; *General Mills, Inc.*, 158 F. Supp. 3d at 117.  Additionally, *Johnson* was premised on the plaintiff's Eighth Amendment conditions-of-confinement claim, not a denial of his Fourteenth Amendment due process rights (the basis of the claims relied on by Plaintiff in this motion).  *Johnson*, 209 F. Supp. 3d at 776-81.

The Second Circuit outlined the following three criteria in *Proctor* for analyzing whether the review process related to continued Ad Seg confinement violates due process rights:

> First, the reviewing prison officials must actually evaluate whether the inmate's continued Ad Seg confinement is justified. . . . It is not sufficient for officials to go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in Ad Seg no matter what the evidence shows. Review with a pre-ordained outcome is tantamount to no review at all.
>
> Second, the reviewing officials must evaluate whether the justification for Ad Seg exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available. It is inherent in *Hewitt*'s use of the term 'periodic' that ongoing Ad Seg reviews may not be frozen in time, forever rehashing information addressed at the inmate's initial Ad Seg determination. . . . Rather, reviews must take into account prison conditions and inmate behavior as they change over time; those changes may modify the calculus of whether the inmate presents a current threat to the safety of the facility. The periodic Ad Seg review test announced by the *Hewitt* Court is not whether the confined inmate *was* a threat to the facility when he was confined initially; it is whether the inmate 'remains a security risk' on the date of the periodic review. . . . This is not to say that prison officials are barred from according significant weight to events that occurred in the past. Neither do we suggest that recent events categorically ought to be more salient in periodic reviews than those that occurred long ago. We conclude merely that prison officials must look to the inmate's present and future behavior and consider new events to some degree to ensure that prison officials do not use past events alone to justify indefinite confinement.
>
> Third and finally, the reviewing officials must maintain institutional safety and security (or another valid administrative justification) as their guiding principles throughout an inmate's Ad Seg term. SHU confinement that began for proper Ad Seg purposes may not morph into confinement that persists for improper purposes. The state is entitled to the procedural flexibility that *Hewitt* allows because of its manifest interest in maintaining safe detention facilities and other similar administrative concerns; 'the *Mathews* balancing test tips in favor of the inmate's liberty interest' when a state seeks to impose discipline. . . . The state may not use Ad Seg as a charade in the name of prison security to mask indefinite punishment for past transgressions.

*Proctor*, 846 F.3d at 610-11 (citing *Hewitt v. Helms*, 459 U.S. 460 [1983]; other citations omitted).

16

The Second Circuit summarized this test by noting, "'[P]eriodic reviews of Ad Seg satisfy procedural due process only when they are meaningful.  Reviews are meaningful only when they involve real evaluations of the administrative justification for confinement, they consider all of the relevant evidence that bears on whether that administrative justification remains valid, and they ensure that Ad Seg is used neither as a form of punishment nor a pretext for indefinite confinement." *Id.* at 614.  A careful balancing of these factors does not weigh in favor of finding that there is a clear or substantial likelihood of success on the merits of Plaintiff's due process claims.

First, the Court concludes that Plaintiff has not sufficiently shown that the 60-day review process was a sham with a preordained outcome.  Unlike *Proctor,* where there was testimony from prison officials that they had no intention of releasing Mr. Proctor regardless of more recent conduct, there are no such statements here.  *See Proctor*, 846 F.3d at 612-13.  Notably, recent Central Office Review Committee reports from July 20, 2017, and August 15, 2017, while recommending that Plaintiff be retained in Ad Seg at that time, noted that Plaintiff "appears to be a strong candidate for transition, and other possibilities should be considered and evaluated so long as [Plaintiff] continues to demonstrate appropriate communication and behavior."  (Dkt. No. 33, Attach. 3, at 3, 5.)  On November 7, 2017, the Central Office Review Committee stated that a less restrictive environment could be considered in the future if Plaintiff "can demonstrate a true change in his attitude," but noted that Ad Seg remained appropriate at that time, particularly in light of a pending ticket related to a recent alleged violation of the phone rules.[8]

---

[8]     Plaintiff was later found guilty of violating the rules of the phone program and engaging in an improper three-way call, though he was found not guilty of the soliciting charge. (Dkt. No. 33, Attach. 4, at 2.)

(Dkt. No. 33, Attach. 3, at 9.)  In his declaration of November 22, 2017, Scott Kelly, Director of Crisis Intervention for DOCCS (who indicated that he participated in Ad Seg reviews as a member of the Central Office Review Committee) stated that he had foreseen a day when Plaintiff might be released to a less restrictive environment, but, due to his recent infraction, he must demonstrate he will go back to improving his behavior for that to happen.  (Dkt. No. 29, Attach. 1, at ¶ 39.)  Mr. Kelly also noted that the Central Office Review Committee had recently recommended the release of two other Ad Seg inmates.  (*Id.* at ¶ 45.)  In his declaration, Acting Deputy Commissioner James Gorman noted that "many of the assessments suggest that [P]laintiff is on the right path to demonstrating that the time may be near to start providing him with fewer restrictions, greater freedoms, and more frequent contact with staff and other inmates."  (Dkt. No. 29, Attach. 2, at ¶ 48.)  In his declaration, Sergeant Kevin Randall stated that, as a member of the facility-level review team, he was never pressured to make a specific recommendation as to Plaintiff's Ad Seg retainment and that "[o]nce [Plaintiff] demonstrates his ability to control his anger at minor set-backs and discuss matters maturely and rationally, I will be able to recommend that [he] be moved from Ad Seg to a less restrictive environment."  (Dkt. No. 29, Attach. 3, at ¶¶ 24, 28.)  Sergeant Randall stated that, based on his observations, "I believe that day will come."  (*Id.* at ¶ 30.)  Although the Central Office Review Committee reports do show that Plaintiff has been overall exhibiting appropriate behavior on a regular basis in recent years with only sporadic infractions, Plaintiff has not established any facts that sufficiently indicate that the review process was unfairly predetermined against him, particularly in light of the statements in these recent review reports and declarations from DOCCS officials.

Second, the Court concludes that Plaintiff has not sufficiently shown that DOCCS relied on past events alone to justify Plaintiff's continued Ad Seg confinement.  The Second Circuit makes clear that DOCCS officials are not precluded from considering past incidents (specifically noting that officials are in fact allowed to afford significant weight to those incidents), but rather that past incidents may not be the sole basis for the decision to continue Ad Seg.  *Proctor*, 846 F.3d at 610-11.  Although the review reports show that DOCCS did afford fairly substantial weight to Plaintiff's past conduct and that a significant number of the reports note overall positive observations regarding his attitude and behavior, some of the reports contain less favorable notations which show that reviewing officials did consider other, more recent, conduct as part of their review analysis.  Of note, a report from June 2012 noted that Plaintiff had a pending behavior report for lewd conduct and failing to follow a direct order (among other things), as well as that his attitude and behavior during the past few months had been inappropriate; inappropriate attitude and behavior were also noted in the August 2012 report. (Dkt. No. 17, Attach. 4, at 22, 25.)  Reports from September 2012, January 2013, and March 2013 noted that the June incident showed that Plaintiff continued to lack the ability to follow directions and prison rules and that, "[i]f released back into the general population, [he] will continue his aggressive, abusive, and dangerous manner;" these reports also variously noted that Plaintiff's behavior overall suggested he was manipulative, arrogant, and had a confident manner that "he wields as a means of intimidation."  (*Id.* at 28-29, 31, 34.)  Plaintiff had another misbehavior report in April 2015 related to possession of contraband.  (*Id.* at 104, 115.)  In the July 2016 report, the facility committee stated that Plaintiff "has regressed into past disruptive behavior, giving staff a hard time and not follow[ing] direction," noting also a recent misbehavior report for creating a disturbance and disobeying a direct order; it was also noted that

he still exhibited extreme irritability.  (*Id.* at 133.)  More recent reports state that Plaintiff was

"upset" over discontinuation of the Pilot Incentive Program, but there is no indication as to the

nature of his expression of those feelings.  (Dkt. No. 33, Attach. 3, at 2-3, 4-5, 6-7.)  He received

a misbehavior report in September 2017 for violation of the phone call rules.  (*Id.* at 8.)

Although these notations of poor conduct and the issuance of misbehavior reports occur months

and even years apart, they suggest that DOCCS officials did not rely on past events alone when

determining that Plaintiff continued to pose a security risk to prison staff and other inmates such

that he should remain confined in Ad Seg.  The declarations of various officials involved in the

Ad Seg review process further show that past behavior was not the only consideration for

keeping Plaintiff in Ad Seg.  (Dkt. No. 29, at 16-18 [Defs.' Opp'n Mem. of Law] [summarizing

the relevant content of those declarations].)  Additionally, Plaintiff's argument that DOCCS'

decisions used impermissible circular logic (i.e., that Plaintiff's good behavior under the Ad Seg

restrictions was a sign that he should be kept in Ad Seg) is not a persuasive ground for finding

that he has shown a substantial likelihood of success as to this factor because, in making this

argument, he ignores all of the previously cited evidence from the 60-day review reports.  (Dkt.

No. 17, Attach. 1, at 22-25 [Pl.'s Mem. of Law].)  Notably, although the reports do contain some

notations suggestive of the circular logic Plaintiff asserts, overall, the reports indicate that

DOCCS officials still considered both past conduct and his current behaviors when continuing to

recommend Ad Seg confinement.

Third, the Court concludes that Plaintiff has not sufficiently shown that his retention in

Ad Seg was punishment masked as concern for safety and security.  As stated above, Plaintiff's

argument that his confinement in Ad Seg is "indefinite punishment for past transgressions" is

based on his selective recitation of the evidence that excludes the notations of incidents of poor

behavior and multiple misbehavior reports between 2012 and 2017.  Most relevant to analysis of this factor are statements in those reports related to misbehavior that suggests Plaintiff remained unable to consistently follow rules and direct orders, acted in a manner that could serve to intimidate others, and expressing "extreme irritability," all of which serve as a basis for DOCCS officials' stated belief that he would pose a threat to the security and the safety of others if placed in a less restrictive environment.  Additionally, Plaintiff's assertion that Ad Seg is being used as punishment rather than for legitimate reasons of safety also ignores the fact that he was permitted to participate in the Pilot Incentive Program, through which he received various greater privileges contingent on continued good behavior, including additional exercise time, additional family visits, more comfortable clothing, phone calls, television time, and money for the commissary.  (Dkt. No. 17, Attach. 4, at 30, 33, 36, 45, 48, 51, 54, 57, 60, 63, 72, 79, 93, 95, 105, 108, 114, 117, 120, 123, 126, 129, 132, 137, 139, 143, 145, 147.)  Notably, Plaintiff had these privileges suspended for a time due to misbehavior on two occasions, one of which was for creating a disturbance and disobeying a direct order in 2016.  (*Id.* at 39, 133-134.)  Plaintiff has not sufficiently shown that the DOCCS officials' concerns about his potential to undermine prison security and safety if released to a less restrictive environment were a mere pretext for using Ad Seg as a continuing punishment for past behavior.

Based on the above, the Court finds that Plaintiff has not shown that there is a clear or substantial likelihood of success on the merits of his claims related to his confinement in Ad Seg without due process.[9]  For all of these reasons, the Court denies Plaintiffs' motion for a preliminary injunction.

---

[9]     Plaintiff's motion for a preliminary injunction is expressly based on the alleged failure of Defendants to provide meaningful review of his Ad Seg confinement as required by the Fourteenth Amendment.  (Dkt. No. 17, Attach. 1, at 6-7, 21 [Pl.'s Mem. of Law].)  Plaintiff does not seek a preliminary injunction based on his Eight Amendment claims.

B.      **Irreparable Harm and Public Interest**

Having found that Plaintiff has not shown a clear or substantial likelihood of success on

the merits of his Fourteenth Amendment claims, the Court need not, and does not, render a

finding regarding the remaining two prongs of the preliminary injunction standard.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 17) is

**DENIED**.

Dated: February 9, 2018
          Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge